Betty Gates POE; Louise Roundtree Gates; John Gates; Connie Gates Riner; and Bonnie Saunders, Appellants,

v.

Brent E. GAUNCE; Deloris Howard; Brenda Gaunce; and Tom Harvey, Appellees.

No. 2010–CA–001774–MR.

Court of Appeals of Kentucky.

Nov. 4, 2011.

Rehearing Denied Dec. 28, 2011.

Discretionary Review Denied by Supreme Court Aug. 15, 2012.

Stephen A. Brooks, Louisville, KY, for appellants.

Don A. Pisacano, Lexington, KY, for appellees.

Before COMBS, MOORE, and NICKELL, Judges.

## OPINION

MOORE, Judge:

The heirs of Roy Eugene Gaunce (the above-captioned appellees) and the heirs of Charles Gates (the above-captioned appellants) each sought declarations of their rights from the Nicholas Circuit Court re-

garding ownership of two burial sites and a monument located on a family cemetery plot in Nicholas County, Kentucky. The circuit court found in favor of the Gaunce heirs, and the Gates heirs now appeal. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Because this case deals with specifically designated burial sites and inscriptions in a monument, it is incumbent on the Court to describe such in detail.

On May 14, 1957, Roy Eugene Gaunce became the sole record owner of a family burial plot located in the Carlisle Cemetery in Carlisle, Kentucky. The deed to this plot recites a consideration of $250, and further recites that the boundaries of the plot consist of the western half of lot 71, section M; that it contains 150 square feet; and that the plot is to be used "for the purpose of sepulture alone." In total, this plot encompasses four burial sites, described by the Carlisle Cemetery as sites "71–GR1," "71–GR2," "71–GR7," and "71–GR8." Hereafter, we will simply refer to these as sites "1," "2," "7," and "8."

That year, a granite monument was placed in roughly the center of this burial plot, and the side of the monument facing sites 7 and 8 contains the inscription, "GATES," above two smaller inscriptions, "MARGARET HOLSOMBACK" and "CHARLES A." The other side of the monument, which faced sites 1 and 2, contains the inscription, "GAUNCE," above two smaller inscriptions, "NANCY SKEEN" and "ROY EUGENE." And, on another side, specifically the width of the monument between Margaret's and Nancy's names, there is another inscription: "RONALD CHARLES GATES." By way of background, Nancy Skeen Gaunce was

Roy's wife; Charles A. Gates was Nancy's son from a prior marriage and was Roy's stepson; Margaret Holsomback Gates was Charles Gates's first wife; and Ronald Charles Gates was Charles's stillborn son. Ronald was buried to the side of the monument where his name was inscribed and did not occupy any of the four sites. Otherwise, at the time this monument was erected, each of these individuals was alive.

In 1976, Margaret passed away and was buried in site 7, located below where her name had been inscribed on the "GATES" side of the monument. Nancy passed away in 1990 and was buried in site 1, located below where her name had been inscribed on the "GAUNCE" side. And, Roy passed away in 1998 and was buried in site 2, next to Nancy and underneath his own name.

Charles passed away in 2001. Prior to that time, however, he had married a second wife, Louise Gates, and had directed Louise to disinter the remains of Margaret and Ronald and inter their remains along with his own in another family burial plot he had purchased in Carlisle Cemetery. Louise had Charles interred in his separate burial plot. And, approximately eight years later,[1] Louise was issued a permit to disinter Ronald and Margaret and reinterred their remains with Charles according to his wishes.

July 15, 2009, was the date of the disinterment and reinterment. That morning, Charles's daughter, Betty Gates Poe, arrived at the Carlisle Cemetery and noticed that the monument was missing. Later that day, Brent Gaunce, Roy's grandson, told Betty that he had removed the monument the previous evening because he was afraid that the excavation equipment used for the disinterment might damage it.

---

1. Louise attributed this extended lapse of time to the cost of disinterment.

But, following the disinterment, the monument was not returned to the western half of lot 71, and a dispute arose between the Gates heirs and the Gaunce heirs regarding who owned the vacant sites 7 and 8, and who owned the monument.

Thereafter, the Gates heirs and the Gaunce heirs asked the Nicholas Circuit Court for a declaration of their respective rights on these subjects. In support of their claim of ownership regarding the two sites and the monument, the Gaunce heirs pointed to the clear language of Roy Gaunce's deed from the Carlisle Cemetery Corporation, and also produced an affidavit from Roy Gaunce's daughter, Deloris Howard, which states in relevant part:

3. I was present and have personal knowledge and do attest to the fact that [Roy] Eugene Gaunce purchased the four burial plots at issue in this case, purchased the monument, and had inscribed the names of [Roy] Eugene Gaunce and Nancy Gaunce on one side of the monument, and Charles Gates and Margaret Gates' names on the other side of the monument.

4. My father, [Roy] Eugene Gaunce, bought the graves for the purpose of allowing Charles Gates and Margaret Gates to be buried close to his mother, Nancy Gaunce.

5. My father, [Roy] Eugene Gaunce, did not want, nor did he intend for anyone else to be buried there.

On the other hand, in support of their claims of ownership, the Gates heirs argued that a photocopy of a check for $164.13, made payable to Charles Gates, which Charles Gates endorsed and Roy Gaunce deposited on or about May 7, 1957, might be evidence representing Charles Gates's consideration for a half-interest in the burial lot. Second, the Gates heirs argued that they adversely possessed sites 7 and 8 because Margaret was buried in

site 7 and Margaret and Ronald were buried near site 8 for a period of time in excess of fifteen years. Third, the Gates heirs argued that even if Roy Gaunce's deed did initially include sites 7 and 8, that by designating those two sites for Charles and Margaret, Roy Gaunce gave Charles and Margaret Gates, along with the heirs and assigns of Charles and Margaret Gates, the right to bury anyone in those sites. The Gates heirs also asked the circuit court to order the Gaunce heirs to pay their legal fees, per Kentucky Revised Statute(s)(KRS) 411.120.

After considering the evidence of record in this matter, which will be discussed in greater detail in our analysis, the circuit court rendered an order which states in relevant part:

### FINDINGS OF FACT

. . .

(3) Roy Eugene Gaunce purchased four (4) burial plots from the Carlisle Cemetery on May 14, 1957, for $250.00. The plots joined each other, two (2) in front and two (2) in back.

(4) The Carlisle Cemetery recognizes Roy Eugene Gaunce, and now his heirs, as the owners of record of the four (4) burial plots.

(5) The plots were designated for Roy Eugene Gaunce and his wife Nancy Skeen Gaunce—front side, and for Charles Gates and Margaret Gates—back side. The two plots for Charles and Margaret Gates are the plots at issue in this case. The stillborn child, Ronald C. Gates, was buried on the side of the plots in such manner that still allowed for four (4) burial plots.

(6) Roy Eugene Gaunce subsequently purchased a single monument which was erected touching all four plots with cor-

responding names on each side identifying each individual future gravesite.

. . .

## CONCLUSIONS OF LAW

(1) Roy Eugene Gaunce, and now his heirs, are the lawful owners of the two (2) gravesites at issue and the monument.

(2) Roy Eugene Gaunce designated that Charles and Margaret Gates could be buried in the two (2) gravesites.

(3) After Margaret Gates was buried in her designated gravesite she had a perpetual easement to remain buried there.

(4) When Margaret Gates was disinterred on July 15, 2009, any right she or her heirs had to the gravesite was abandoned.

(5) When Charles Gates chose not to be buried in his designated gravesite[,] he abandoned any right he had to the gravesite.

The Gates heirs now appeal, and the three issues raised by the Gates heirs are: 1) Whether the circuit court erred in determining that the Gaunce heirs owned sites 7 and 8; 2) Whether the circuit court erred in determining that the Gaunce heirs owned the monument that was formerly situated on burial lot 71; and 3) Whether the Gates heirs are entitled to their legal costs, per KRS 411.120.

## II. STANDARD OF REVIEW

[Because] this case was tried before the court without a jury, its factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. A factual finding is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence of substance and relevant consequence sufficient to induce conviction in the minds of reasonable people. It is within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence. With respect to property title issues, the appropriate standard of review is whether the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error.

*Cole v. Gilvin,* 59 S.W.3d 468, 472–73 (Ky. App.2001) (internal citations, footnotes, and quotations omitted).

## III. ANALYSIS

**1. Ownership of the western half of burial lot 71, sites 7 and 8.**

 In Kentucky, the property interest acquired by a burial lot owner in an established cemetery is considered to be something in the nature of a privilege, easement, or license. *Fraser v. Tenney,* 987 S.W.2d 796, 798 (Ky.App.1998) (citing *Brunton v. Roberts,* 265 Ky. 569, 97 S.W.2d 413 (1936)). Specifically, the burial lot owner acquires the privilege, easement, or license to make interments within the lot as he assigns or designates with the cemetery. *Fraser,* 987 S.W.2d at 798. In the absence of an assignment of sites by the burial lot owner before the owner's death, the owner's lineal descendants or parentelic relatives inherit a jointly owned easement for interment in any of the unused sites.[2] *Id.* (citing *Hertle v. Riddell,*

---

**2.** Per the deposition testimony of its representative, Bobby Snapp, this is also the policy of the Carlisle Cemetery Company:

Counsel: What happens, then, if the original owner who purchased the lots and designates one of them to his son Mike and

127 Ky. 623, 106 S.W. 282 (1907); *Hook v. Joyce*, 94 Ky. 450, 22 S.W. 651 (1853)). And, generally speaking, this easement or license survives until the plot is abandoned or voluntarily relinquished by the person who established the plot or that person's heirs, and it is subject to reasonable regulation by the cemetery and the state. *Brunton*, 97 S.W.2d at 415; *Fraser*, 987 S.W.2d at 798; *see also Heiligman v. Chambers*, 338 P.2d 144, 148 (Okla.1959) ("The easement and rights created thereunder survive until the plot is abandoned either by the person establishing the plot or his heirs, or by removal of the bodies by the person granted statutory authority.") (citing *Nicholson v. Daffin*, 142 Ga. 729, 83 S.E. 658 (1914); *Trefry v. Younger*, 226 Mass. 5, 114 N.E. 1033 (1917); *Hook*, 22 S.W. 651; *Roanoke Cemetery Co. v. Goodwin*, 101 Va. 605, 44 S.E. 769 (1903); and *Boyd v. Ducktown Chemical & Iron Co.*, 19 Tenn.App. 392, 89 S.W.2d 360 (1935)).

The overarching issue in this matter is, essentially, who owns the easement for interment with respect to burial sites 7 and 8 in the western half of burial lot 71 in the Carlisle Cemetery. And, on appeal, the Gates heirs reassert each of the arguments that they offered below.

Therefore, we will begin with their first argument, namely, that a photocopy of a check for $164.13, made payable to Charles Gates and which Charles Gates endorsed and tendered to Roy Gaunce on or about May 7, 1957, might be evidence representing Charles Gates's consideration for a half-interest in the burial lot. This argument and the check supporting it are merely speculative because the check contains no notation indicating its purpose, and no one with personal knowledge testified regarding the check's purpose.

■ Moreover, the circuit court's contrary finding, *i.e.*, that Roy Gaunce owned the entirety of the interment easement, is not clearly erroneous because it is supported by substantial evidence. *Cole*, 59 S.W.3d at 472–73. In particular, only Roy Gaunce's name appears on the express easement deed issued by the Carlisle Cemetery Corporation with respect to the western half of burial lot 71. And, Roy Gaunce's daughter, Deloris Howard, stated by affidavit that she "was present and [has] personal knowledge and do[es] attest to the fact that Eugene Gaunce purchased the four burial plots at issue in this case."

The Gates heirs' second argument is that they adversely possessed the part of the Gaunces' interment easement covering sites 7 and 8 because Margaret was buried in site 7 and Margaret and Ronald were buried near site 8 for a period of time in excess of fifteen years. This argument also lacks merit.

■ As an aside, whether the Gates heirs base this argument upon the law of adverse possession or the law regarding prescriptive easements,[3] the law is the same: As with adverse possession of a fee simple estate, a prescriptive easement can only be acquired by actual, hostile, open and notorious, exclusive, and continuous

---

Mike is buried elsewhere, what happens to that designation?
Snapp: It still stays in the family's name.
Counsel: The original owner's?
Snapp: Original owner's name. And so if they ever want to put someone else there, then the whole family would have to come back and say so-and-so is to be buried in that spot. But it remains in the family.

**3.** A prescriptive easement is a property right in one landowner, the dominant tenement, representing a privilege to use the land of another, the servient tenement, based upon a presumed grant arising from the adverse, uninterrupted, and continued use of such land. *Cole*, 59 S.W.3d at 475 (citing *Illinois Central R.R. Co. v. Roberts*, 928 S.W.2d 822, 827 (Ky.App.1996)).

possession of the property for the statutory period of fifteen years. *Columbia Gas Transmission Corporation v. Consol of Kentucky, Inc.,* 15 S.W.3d 727, 730 (Ky. 2000); *see also* KRS 413.010; *Riley v. Jones,* 295 Ky. 389, 174 S.W.2d 530, 532 (1943); *Pickel v. Cornett,* 285 Ky. 189, 147 S.W.2d 381, 382 (1941).

 That said, even in the context of cemetery burial rights, "It is a well settled rule that use of property by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription...." *Grinestaff v. Grinestaff,* 318 S.W.2d 881, 884 (Ky. 1958) (citing *McCoy v. Hoffman,* 295 S.W.2d 560, 561 (Ky.1956)). And here, the Gates heirs' claim of adverse possession must fail because the record only demonstrates that Margaret and Ronald were buried in lot 71 with Roy Gaunce's knowledge and consent. Indeed, Bobby Snapp testified in his deposition that it is the policy of the Carlisle Cemetery Company to secure the consent of the record owner of the burial rights of a plot prior to burying anyone on that plot, and, as noted, Roy Gaunce was the record owner of the western half of lot 71 at the time that Ronald and Margaret were buried there. Similarly, Doloris Howard stated in her affidavit that she witnessed Roy Gaunce purchase the burial monument that was placed over the western half of lot 71, and that Roy Gaunce directed the seller to inscribe the Gateses' names onto the side of the monument that eventually faced sites 7 and 8.

Necessarily, this leads to the Gates heirs' third and final argument, *i.e.,* that even if Roy Gaunce's interment easement over the western half of burial lot 71 did initially include sites 7 and 8, that by designating those two sites for Charles and Margaret Gates, Roy Gaunce gave Charles and Margaret Gates, along with the heirs

and assigns of Charles and Margaret Gates, a license or easement to bury anyone in those sites.

This argument begs a question: When the owner of an express easement for interment makes designations of specific burial plots for the interment of specific individuals, what is the nature of the property interest received by those individuals? Simply put, the answer is that the individuals in question receive an easement for a particular purpose. And, as noted in 28A C.J.S. *Easements* § 160 (2009),

> While an express easement generally does not terminate even when the necessity or purpose of the easement ceases, an easement granted for a particular purpose may terminate as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. An interest in the nature of an easement is not terminated where the purpose for which it is created is neither totally nor permanently impossible of enjoyment. The first step in analyzing the impossibility of a purpose, as grounds for modifying or terminating an easement, is to determine the purpose of the easement.

(Internal citations omitted.) *See also Dennis Long & Co. v. City of Louisville,* 98 Ky. 67, 32 S.W. 271, 277, 17 Ky.L.Rptr. 642 (1895).

It is difficult to imagine an easement more expressly limited in scope and purpose than the one at bar. The record reflects only that it was the intent of Roy Gaunce, literally written in stone, to designate sites 7 and 8 solely for the purpose of burying Charles and Margaret Gates. Any rights the Gates heirs held with respect to sites 7 and 8 thus solely derived from the burial of, or the prospect of burying, the remains of Charles and Margaret Gates in those sites. But, Charles Gates chose to be buried elsewhere and directed

his second wife, Louise Gates, to disinter Margaret following his death; Louise had Margaret disinterred and buried with Charles and had the statutory authority to do so (because she legally obtained a permit); and, Louise testified in her deposition that she has no intention of disinterring Charles and Margaret and putting them back in sites 7 and 8.

In short, substantial evidence supports that the particular purpose of the Gates heirs' easement has ceased to exist, has been rendered impossible of accomplishment, and, as the circuit court held, has been abandoned. In the event of disinterment, it is also the Carlisle Cemetery Company's policy, according to its representative, Bobby Snapp, that the vacated burial site reverts back to the ownership of the person, or heirs of the person, who originally purchased the easement covering that site. Thus, we find no error in the circuit court's determination that the heirs of Eugene Gaunce are the lawful owners of sites 7 and 8.

### 2. Ownership of the monument

The next issue in this matter is whether the Gates heirs or the Gaunce heirs own the burial monument that formerly resided in the center of the western half of burial lot 71. The thrust of the Gates heirs' position on this issue, to quote their pleadings filed before the circuit court, is:

[T]he Gates/Gaunce memorial monument is owned jointly by the two families since both families had deceased interred therein and any change or relocation to the monument must have the approval of all next of kin owners by law, [and] it is immaterial what the [Gates heirs] want to do regarding the monument inscriptions on their side of the stone; leaving it as-is as a memorial inscribing "formerly the sacred ground of" before their names, entombing new

and memorializing using footstones, etc[.]

Yet, as we stated previously, substantial evidence supports the circuit court's findings that only Roy Gaunce purchased the monument in question. Substantial evidence supports that Margaret and Ronald Gates's remains were buried in the western half of lot 71 with the knowledge and consent of its owner, Roy Gaunce; thus, while the Gateses also appear to argue that they own the monument by adversely possessing the ground underneath it, that argument, too, must fail. Substantial evidence supports that Roy Gaunce erected the monument to evince his intent to grant easements for a particular purpose, *i.e.*, burial easements that applied only to Charles, Margaret, and Ronald Gates's remains. And, substantial evidence also supports that the Gates heirs abandoned the particular purpose of those easements, and any rights relating to them, by removing Margaret and Ronald Gates's remains from, and by choosing not to bury Charles Gates in, those locations.

■ Under the state of these facts, the circuit court did not err in determining that the Gaunce heirs, rather than the Gates heirs, own the monument. Nothing in the record demonstrates that Eugene Gaunce ever intended for the monument, in and of itself, to be an outright gift to the Gates heirs. At best, the monument merely reflected, and was a part of, three now-extinguished burial easements.

### 3. The Gates heirs are not entitled to their legal costs in this matter.

In relevant part, KRS 411.120 provides that "If the plaintiff establishes his title to the land the court shall order the defendant to . . . pay the plaintiff his costs." The Gates heirs are not entitled to recover their legal costs because the circuit court adjudicated this matter in favor of the Gaunce heirs and, in light of the above, the

circuit court's judgment was not clearly erroneous.

## IV. CONCLUSION

For these reasons, the decision of the Nicholas Circuit Court is affirmed.

ALL CONCUR.