RENDERED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0431-DG

CITY OF VERSAILLES; TERRY BROWN;          APPELLANTS
PAUL SIMMONS; AND BRIAN TRAUGOTT

ON REVIEW FROM COURT OF APPEALS
V.            NO. 2018-CA-1647
WOODFORD CIRCUIT COURT NO. 14-CI-00364

SHIRLEY JANE JOHNSON            APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>REVERSING AND REMANDING</u>**

The City of Versailles appeals the decision of the Court of Appeals which found that Shirley Jane Johnson was an invitee when she was injured in 2013 while visiting the monument marking her son's grave at the Rose Crest Cemetery, which the City of Versailles maintains. Finding that Johnson, not the cemetery, owned the monument which injured her, we reverse the decision of the Court of Appeals because the cemetery was not obligated to inspect and repair the monument, regardless of Johnson's status as either an invitee or licensee while on cemetery grounds.

## I. Factual and Procedural History

Following the untimely death of her son, Johnson had him buried at the Rose Crest Cemetery, which was privately owned at the time. Concurrent with

the burial, Johnson purchased the monument at issue from the Duell-Clark Funeral Home, which also handled its installation. The monument was constructed in two pieces: the base, which included a decorative urn on either side of the headstone, and the headstone itself which was secured to the base by an adhesive.

In August 2012, while visiting the grave, Johnson noticed that one of the decorative urns had broken off from the base of the monument. Johnson stated that she noticed the urn had black tire marks on its side, leading her to conclude that it had been damaged when one of the cemetery employees had been mowing the grounds. When Johnson contacted then-mayor Fred Seigelman regarding the damage to the monument, Seigelman offered to replace both decorative urns. Johnson did not like the replacement urns. Paul Simmons, the assistant public works director for Versailles, offered instead to repair and replace the original urns. When Simmons finished the repairs, he accompanied Johnson to visit the gravesite. Although Simmons disputes the following exchange, Johnson claims that during that visit Simmons informed her that the headstone was loose and offered to repair it as well.

Thirteen months later, in December 2013, Johnson again visited the cemetery to place a Christmas wreath on her son's grave. While attempting to stand up, Johnson gripped the headstone to steady herself. The headstone dislodged from the base, toppling onto Johnson's right foot and trapping her underneath. Johnson flagged down another visitor who called for help. When the firefighters arrived at the scene they removed the headstone from

Johnson's foot and transported her to the hospital. As a result of the incident Johnson suffered a fractured foot, a damaged knee, and apparent permanent nerve damage.

Johnson contacted Mayor Brian Traugott after her injury and requested the City repair her son's monument. Despite disclaiming any responsibility for the monument on the theory that the City did not own the headstone, Traugott nevertheless instructed Simmons to repair it. In December 2014, Johnson sued the City, Mayor Traugott, Assistant Simmons, Cemetery Supervisor Brown, and "unknown employees" of the City for negligence in maintaining her son's monument. The City and each named defendant filed a motion for summary judgment, which the trial court initially denied. Finally, in October 2018, the trial court granted the City's and all named defendants' renewed motion for summary judgment finding that Johnson had failed to establish that Versailles owed her a duty to maintain or repair the headstone. Instead, the trial court found that the City's only duty was to warn against defects of which it was aware. On appeal, the Court of Appeals reversed the trial court, finding that Johnson was a business invitee and was owed an affirmative duty by the cemetery to inspect and repair the monument. We granted Versailles' motion for discretionary review and now reverse the Court of Appeals.

## II. Standard of Review

On appeal, the standard of review for a summary judgment is to ascertain whether the trial court correctly determined that no genuine issue of material fact existed, entitling the moving party to judgment as a matter of law.

*Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010). In conducting our review, we give no deference to the rulings below because only legal questions are involved. *Id.*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. The reviewing court must construe all facts in favor of the nonmoving party and granting summary judgment is only appropriate when "the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

### III. Analysis

To succeed on her negligence claims against the City of Versailles Johnson must prove that the City owed her a duty to maintain the monument, that the City breached that duty towards her, and that the breach caused her injuries. Failure to prove a single element is fatal to her claim. In the Commonwealth, the general rule is that property owners, such as Rose Crest Cemetery, have "a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined according to the status of the plaintiff." *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 909 n.28 (Ky. 2013). Consequently, the City's duty of care towards Johnson would be

---

[1] Kentucky Rules of Civil Procedure.

different if she was a licensee than if she was an invitee. *See Smith v. Smith*, 563 S.W.3d 14, 17-18 (Ky. 2018) (landowner owes licensee a duty to "not knowingly let[] her come upon a hidden peril or willfully or wantonly caus[e] her harm[;]" while an invitee "enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there[]") (citations omitted).

However, while these status-based duties continue to serve Kentuckians well in general premises liability matters, cemeteries are uniquely situated among public spaces in the Commonwealth. Part and parcel of the distinction between businesses (or public spaces, generally) and cemeteries is the property interests associated with purchasing a grave plot and placing monuments thereon. Ordinarily, purchasing a grave plot results in an easement, or a license, to inter whomever the purchaser wishes. *Poe v. Gaunce*, 371 S.W.3d 769, 773 (Ky. App. 2011). That easement is a property right, which, if unassigned, passes to the owner's descendants. *Id.* In contrast to the easement, the monuments and grave stones which adorn these plots are the personal property of the purchaser. While perhaps intuitive, we note that unless specifically detailed in a perpetual care agreement, the cemetery where the monument is located has no property interest in the monument and consequently no duty towards its maintenance. *See* KRS[2] 367.932(17) (defining "cemetery merchandise" as "urns, memorials, monuments, markers,

---

[2] Kentucky Revised Statutes.

5

vases, foundations, memorial bases, and other similar personal property commonly sold by or used in cemeteries[]").  In fact, Johnson's own arrangements regarding her son's monument reflect this principle well.  When Johnson purchased the monument in question she did not buy it from Rose Crest Cemetery.  Instead she worked with the Duell-Clark Funeral Home to design, purchase, and install the monument on the grave.  At no time during, or since, that exchange was the cemetery involved.  The result of this duality is that the same plot of land confers different rights and duties depending on whether the monument is implicated.

The inescapable reality is that even if we were to resolve the question of Johnson's status as either an invitee or licensee, our inquiry would still be incomplete because Johnson was not injured by anything which the cemetery controlled.  Johnson does not allege that the pathways were in disrepair, or that fallen tree branches or other debris caused her harm.  Instead, Johnson was hurt when she attempted to lean on the only property in the cemetery for which she was responsible.  Moreover, according to her own testimony, Johnson was already aware on the day she was injured that the headstone was coming loose from the base and required repairs.

Finally, we note that Johnson's statutory argument based on KRS 381.697 is similarly unpersuasive because KRS 381.697(2) does not create an affirmative duty on cemeteries to inspect headstones for disrepair, where otherwise none exists.  By its plain language, this statute requires cemeteries to "keep the burial grounds or cemetery free of growth of weeds, free from

6

accumulated debris, displaced tombstones, or other signs and indication of vandalism or gross neglect." As the Court of Appeals correctly noted, the cemetery's duty is to maintain the premises, generally, and to ensure that all visitors may travel the common spaces without harm. This general duty to maintain the premises is consistent with the various property interests in a cemetery. Where the cemetery has a cognizable interest, and retains control over the premises, it must ensure those spaces are maintained. However, because the cemetery has no property interests in the monuments, its duties are strictly defined by statute and limited here to the removal of displaced headstones.

## IV. Conclusion

Since the City did not owe Johnson a duty with regards to the monument we do not discuss the remaining elements of negligence. Instead, we reverse the decision of the Court of Appeals and remand the case to the Woodford Circuit Court for further proceedings in accordance with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Victoria Frances Dickson
Jonathan L. Gay
Erica Keenan Mack
Walther, Gay & Mack, PLC


COUNSEL FOR APPELLEE:

Bradly Edward Moore
Kopka, Pinkus & Dolin, PC

Ryan Edward Singleton

COUNSEL FOR AMICUS, KENTUCKY
CEMETERY ASSOCIATION, INC.:

Stephen Avritt Brooks