RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0142-MR

ROBERT L. ALEXANDER AND
JEANNE M. ALEXANDER                                          APPELLANTS


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
ACTION NO. 20-CI-00340


TERRY D. GILLIAM AND
BARBARA J. GILLIAM,
INDIVIDUALLY AND AS
TRUSTEES OF THE GILLIAM
FAMILY IRREVOCABLE
TRUST                                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE:  This appeal involves a right of access to a 7.343-acre tract

of real estate situated in McCracken County, Kentucky, near Interstate Highway

24, owned by appellants Robert and Jeanne Alexander ("the Alexanders"). The Alexanders filed the underlying lawsuit in McCracken Circuit Court against Appellees Terry and Barbara Gilliam ("the Gilliams") in their above-captioned capacities, seeking a declaration of permanent easement rights. Specifically, the Alexanders claimed their 7.343-acre tract was accessed by means of either a prescriptive easement or an easement by necessity through the Gilliams' tract, and that the Gilliams had unlawfully blocked their access. The circuit court summarily dismissed the Alexanders' easement by necessity claim, and it later directed a verdict in favor of the Gilliams regarding the Alexanders' prescriptive easement claim. This appeal followed. Upon review, we affirm.

## I. EASEMENT BY NECESSITY

As indicated, the circuit court disposed of the Alexanders' easement by necessity claim via summary judgment. "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment can only be properly granted "where the movant shows that

the adverse party could not prevail under any circumstances." *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985). Our review is *de novo*. *See Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

The three prerequisites for creating an easement by necessity are (1) unity of ownership of the dominant and servient estates; (2) severance of the unity of title by a conveyance of one of the tracts; and (3) necessity of the use of the servient estate at the time of the division and ownership to provide access to the dominant estate. *See Carroll v. Meredith*, 59 S.W.3d 484, 491 (Ky. App. 2001).

The first two of these prerequisites are undisputedly met. To that point, the Alexanders' 7.343-acre (dominant estate) tract and the Gilliams' (servient estate) tract were originally parts of a 73.6-acre tract owned by Mary Frances and Walter Gilliam from 1960 through 1981. On June 6, 1981, Mary Frances and Walter conveyed the 7.343-acre tract to Frances Jeanette Gilliam Travis and her husband, Kelsie Don Travis. Shortly thereafter, Mary Frances and Walter conveyed another portion of their tract – which most of the purported easement at issue in this matter traversed – to Terry and Barbara Gilliam, creating a separate tract that adjoined the 7.343-acre tract to the *south*. On November 3, 1993, Mary Frances, at the time a widow and the sole owner of what remained of the original tract, then conveyed another portion of what remained of the original tract – which a small portion of the purported easement also traversed – to Terry

and Barbara Gilliam. Terry and Barbara subsequently deeded their tracts to their trust. As for the 7.343-acre tract, Frances Jeanette Gilliam Travis became its sole owner when she divorced her husband in 1991; in 2002, she deeded the property to Anne Regina Travis Buchanan and Larry Duston Buchanan (respectively, her daughter and son-in-law); and in 2017, the Buchanans deeded it to the Alexanders.

The third of the above easement by necessity prerequisites is the crux of why the Gilliams were granted summary judgment. According to the circuit court, it was unnecessary to use the Gilliams' tract to access the 7.343-acre tract because the Alexanders have at all relevant times owned the property adjoining the *northern* boundary of the 7.343-acre tract. On appeal, the Alexanders argue the circuit court's judgment was erroneous because, although they have utilized their northern tract for ingress and egress into the 7.343-acre tract since the Gilliams erected the blockade, doing so is inconvenient to the auction business that they conduct on their adjoining tract, and they believe the better route for ingress and egress is through the passway located on the Gilliams' tract.

We disagree. As its name implies, an easement by necessity exists "so long as it is necessary for access" to the dominant estate. *Carroll*, 59 S.W.3d at 491. "Necessity" is a "strict" requirement in this context, *id.*, and such an easement is *not* necessary "if the claimant has another means of access to a public road from his land however inconvenient." *Id*. (footnote omitted). Irrespective of

their claimed inconvenience, the Alexanders can provide – and have provided – access to a public road for the 7.343-acre tract through their other tract adjoining it to the north. Therefore, it is no longer necessary to use the Gilliams' tract to access the 7.343-acre tract, and this required precondition for sustaining an easement by necessity fails. For parity of reasoning, *see Vance v. Rose*, No. 2009-CA-001260-MR, 2010 WL 2867721 (Ky. App. Jul. 23, 2010) (unpublished).[1] Consistent with the principle that an easement by necessity exists *so long as* it is necessary for access, we explained in *Vance* that "an easement of necessity ends when the necessity ends[.]" 2010 WL 2867721, at *5 (citations omitted). Applying that straightforward principle in *Vance*, we determined that an existing easement by necessity is lost when the owners of the dominant estate acquire other property through which access to their tract is possible. *Id*. That logic is sound, and it applies here. Accordingly, the Alexanders could not have prevailed on their easement by necessity claim "under any circumstances," and the circuit court properly granted the Gilliams summary judgment in this regard. *See Rose*, 683 S.W.2d at 256.

---

[1] Although unpublished, we regard *Vance* as persuasive, and an unpublished opinion may be considered as permitted by Kentucky Rules of Appellate Procedure (RAP) 41.

## II. PRESCRIPTIVE EASEMENT

As stated, the circuit court disposed of the Alexanders' prescriptive easement claim by granting the Gilliams a directed verdict.

> Our directed-verdict standard of review is well settled. First of all, when presented with a motion for directed verdict, a trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. As a reviewing court, we must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.
>
> It is the province of the jury, of course, to weigh the evidence, but a directed verdict is appropriate where there is no evidence of probative value to support an opposite result because [t]he jury may not be permitted to reach a verdict upon speculation or conjecture. The judgment of the trial court in such matters will only be substituted when clearly erroneous. In the end, a trial court should only grant a directed verdict when there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (internal quotation marks and footnotes omitted). Additionally, questions of law are reviewed *de novo*. *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 372 (Ky. App. 2008).

"As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years."

*Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727, 730 (Ky. 2000) (citations omitted). "[I]t is the claimant's burden to prove [these factors] by clear and convincing evidence." *Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014). Here, the circuit court directed a verdict in favor of the Gilliams after determining the Alexanders failed to adduce clear and convincing evidence at the December 3, 2024 trial demonstrating their "prescriptive easement" had been used in a manner *hostile* to the Gilliams' interests for at least *fifteen years*. Specifically, the circuit court explained that as far as it could discern from what the Alexanders had presented at trial,

> [T]he only adverse or hostile use of the drive was after Mr. Alexander purchased the property in 2017. The evidence and testimony presented at trial showed that every use of the passway until the Alexanders purchased the property was either by a family member of the owners, or an extended family member, including husband, or someone in privity with a family member, such as a tenant of a co-owner.

December 11, 2024 order, Record at 471.

As for the substance of what the Alexanders presented at trial, the circuit court aptly summarized it as follows:

> First, Plaintiffs offered testimony from Plaintiff Robert Alexander. Mr. Alexander testified regarding his purchase of the subject property in 2017, his intended use for the property, his use of the passway across Defendants' property to access his newly purchased property, and his alleged damages as a result of the Defendants' actions. Mr. Alexander testified he crossed

the passway through the Defendants' property, without permission, for a period of approximately six to seven months beginning in 2017 but ending in 2018 when he testified Defendant Terry Gilliam blocked the passway with a pile of gravel. Mr. Alexander further testified that he did not know whether the Buchanans, the individuals from whom he purchased the property, ever got permission to use the passway.

Plaintiffs next presented testimony from Mr. David Dean. Mr. Dean testified that he resided, for approximately two years between 1989 and 1991, in a trailer located on the property. Mr. Dean testified he rented the property from the owners at the time, Mr. Kelsie Don Travis and his wife Jeanette Travis. Jeanette Travis, he testified, is Defendant Terry Gilliam's sister. Mr. Dean testified that he did not ask anyone for permission to use the passway at issue across the Defendants' property as he believed he had implied permission to do so as Mr. Travis's brother-in-law, Defendant Terry Gilliam, owned the passway and property over which it crossed. He testified he only used the passway for the approximately two years, 1989 to 1991, that he resided in the trailer.

Finally, the Plaintiffs presented testimony from Mr. Kelsie Don Travis. Mr. Travis testified that he used the passway while he was a co-owner of the subject property and the husband of a family member of the Defendants. His wife, co-owner Jeanette Travis, he testified was the sister of Defendant Terry Gilliam. Mr. Travis testified he and his wife were given the property by his wife and Defendant Terry Gilliam's parents. Mr. Travis testified he used the passway over the Defendants' property to access the property he co-owned with his wife between the mid 1980's and 1991 when he and his wife divorced and she retained the property. Plaintiffs presented no testimony from Mr. Travis that he continued to use the drive after the divorce and his ex-wife got the property. Mr. Travis testified that he believed he had implied

-8-

permission to use the passway during his co-ownership of the property with the Defendant's sister. Mr. Travis testified that he crossed the Defendants' property from 1969 through the late 1980's; however, he did so while he worked to improve the property for the benefit of the Giliam family, of which he was a part.

Plaintiffs, following Mr. Travis's testimony, closed their case without offering any other evidence or testimony in support of their claim for a prescriptive easement.

December 11, 2024 order, Record at 469-70.

Notwithstanding, the Alexanders argue the circuit court erred in directing a verdict in favor of the Gilliams. First, they represent that "for a period of approximately 100 years prior to its acquisition by the Alexanders [the 7.343-acre tract] had been accessed by the easement which is included with and is a part of the legal description in their deed. [Video Record ("VR")] 12/03/24, 34:10-35:00, 43:04-44:55." Alexander Br. at 1.

However, the Alexanders' citation to the video record does not lead to any testimony about a 100-year-old easement of any variety – nor do the Alexanders cite any other portion of the record indicating that an easement that old ever existed in this matter. The citation merely leads to Robert Alexander's testimony about the wording of the 2017 deed to the 7.343-acre parcel he and his wife received from Anne Regina Travis Buchanan and Larry Duston Buchanan, and about how he relied upon wording in the deed that an "unrecorded" access

-9-

easement across the Gilliams' property was included with the conveyance. None of that is relevant to whether a prescriptive easement existed.

Next, the Alexanders continue to emphasize that Kelsie Don Travis testified he used the purported prescriptive easement from 1969 through 1991.

However, for purposes of demonstrating the existence of a prescriptive easement, Travis's *use* of the easement is irrelevant unless it was *hostile*; and the Alexanders adduced no clear and convincing evidence that from 1969 until 1991, Travis's use qualified as hostile. To the contrary, Travis testified that when he used the passway from 1969 through 1981, he frequently did so to *improve* the property for Mary Frances and Walter Gilliam. Recall that during that period, Mary Frances and Walter owned all of the land traversed by the passway as well as the 7.343-acre tract, and Travis was Mary Frances's and Walter's son-in-law. When questioned about his use of the passway between 1969 and 1981, Travis testified he frequently used it to access their property to stock the pond located on it with fish, to plant cypress trees around the pond, and to help clean it up.

To be sure, Travis testified he never asked anyone for permission to use the passway at any point in time. Also, between 1981 and 1991, Travis and Jeanette used the passway to access and improve *their* 7.343-acre tract – the property no longer belonged to Mary Frances and Walter at that time.

Additionally, David Dean – who rented the 7.343-acre tract from Travis from 1989 to 1991 – also testified he never asked anyone for permission to use the passway at that time. The Alexanders continue to place great emphasis on these points.

However, taken in conjunction with other testimony, these points fall short of being clear and convincing evidence of *hostile* use: Travis testified he believed he had implied permission to use the drive because he was a member of Jeanette's family; Travis testified he stopped using the drive following his divorce from Jeanette in 1991, when Jeanette received the 7.343-acre tract as part of their divorce settlement; and Dean testified he assumed he had permission to use the drive while he rented the 7.343-acre tract from Travis from 1989 to 1991 because the drive was on Terry Gilliam's property at that time, and he was renting the property from Terry Gilliam's brother-in-law. The use of a purported easement by virtue of a servient estate holder's *permission* to do so – express or implied – defeats any claim that the use was *hostile*. Indeed, "[i]t is a well settled rule that use of property by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription[.]" *Poe v. Gaunce*, 371 S.W.3d 769, 775 (Ky. App. 2011) (internal quotation marks and citations omitted).

That, in turn, leads to the other fatal deficiency of the Alexanders' prescriptive easement claim. As stated, the Alexanders adduced no evidence demonstrating Travis's use of the drive was hostile from 1969 through 1981.

Thus, even if their evidence of Travis's and Dean's alleged "hostile" uses of the passway from 1981 through 1991 satisfied the clear and convincing standard – and it did not – it still fell short of the requisite *fifteen years* of continuous and hostile use. The Alexanders' other trial evidence also failed to make up the difference: They adduced no evidence indicating how or how often the passway was used between 1991 and 2017; and Robert could only testify that he used the passway in a continuous, hostile manner for six or seven months in 2017. In short, there was a complete absence of proof supporting material elements of the Alexanders' prescriptive easement claim. As such, the circuit court properly directed a verdict in favor of the Gilliams in this regard. *See Toler*, 458 S.W.3d at 285.

## III. QUASI-EASEMENT

On page 16 of their appellate brief, the Alexanders argue:

> [T]he *Carroll* court also raised the possibility that some easements are "quasi-easements." Although that term was not used in this case, the easement in question meets all the requirements of a quasi-easement, namely, (1) there was separation (by the Gilliam family) from common ownership, (2) prior to that the easement was so clearly used that it was obviously intended to be permanent, and (3) the easement was highly convenient and beneficial – necessary, in fact – to the land now owned by the Alexanders. If the evidence shows that access to the property is a quasi-easement rather than an easement by necessity, [the Alexanders] still should be allowed to use it and the circuit court should not be allowed to simply take that away from them without evidence.

-12-

As the Alexanders indicate, our opinion in *Carroll*, 59 S.W.3d 484, does explain that some easements may qualify as "quasi-easements" as opposed to easements by necessity or prescriptive easements. What they ignore is that *Carroll* further explained at length that quasi-easements, easements by necessity, and prescriptive easements are, respectively, *different* types of easements based upon *different* legal theories with *different* required elements of proof. *See id*.

To be clear, "quasi-easement" was not, as the Alexanders represent, simply a "term [that] was not used in this case[.]" It was a legal theory the Alexanders never advanced below at any time. "When an issue has not been addressed in the order on appeal, there is nothing for us to review. Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court. An appellant preserves for appellate review only those issues fairly brought to the attention of the trial court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017) (internal quotation marks, brackets, citations, and footnote omitted).

## CONCLUSION

Considering the foregoing, we AFFIRM.


ALL CONCUR.

-13-

BRIEF FOR APPELLANTS:

Stanley K. Spees
Paducah, Kentucky

BRIEF FOR APPELLEES:

Warner T. Wheat
Paducah, Kentucky