**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant/Cross–Appellee,**

v.

**Jason BLEVINS and Alisha Blevins, Appellees/Cross–Appellants.**

**Nos. 2008–CA–000525–MR, 2008–CA–000526–MR.**

Court of Appeals of Kentucky.

Aug. 22, 2008.

Case Ordered Published by Court of Appeals Oct. 10, 2008.

Ralph T. McDermott, Ashland, KY, for Appellant/Cross–Appellee.

John R. McGinnis, James D. Atkinson, Greenup, KY, for Appellees/Cross–Appellants.

Before KELLER, THOMPSON, and WINE, Judges.

## OPINION

KELLER, Judge.

This matter arises from a Petition for Declaration of Rights in which Kentucky Farm Bureau Mutual Insurance Company (KFB) sought a declaration as to whether it owed coverage and a defense to its insureds, Jason Blevins and Alisha Blevins (the Blevinses). KFB has appealed, and the Blevinses have cross-appealed, from the Greenup Circuit Court's September 13, 2006, Declaratory Judgment and from the October 17, 2006, Order amending the Declaratory Judgment, both made final by an order entered February 28, 2008. We reverse as to KFB's direct appeal, affirm as to the Blevinses' cross-appeal, and remand.

In 2001, Jason Blevins (Jason) purchased a lot on Bourbon Street in the Queens Landing subdivision of Lloyd, Kentucky. He chose a house plan from a website and hired Carl Bays to build a house on the lot. Jason chose not to purchase the blueprint of the house, and Bays indicated that he did not need the blueprint to construct the house. Construction was completed and Jason and Alisha moved into the house following their June 2001 wedding. The Blevinses purchased a homeowners' insurance policy from KFB. The following year, the Blevinses purchased land in the country and hired Bays to build another house for them. In October 2002, the Blevinses listed their Bourbon Street house with a realtor. In doing so, Jason completed and signed a seller's

disclosure form, on which he indicated that there were no problems with the roof.

In February 2003, James Fuzy (Fuzy) and his wife, Fonda Robinson (Robinson), purchased the Blevinses' Bourbon Street lot and house for $174,900. They moved into the house a month later. That spring, the area experienced an unusual amount of rain. In June, Fuzy and Robinson discovered leaks in the roof and bay window area, which caused damage to the interior of the house. They also discovered problems with the masonry around the brickwork on the outside of the house. Fuzy immediately contacted Jason, who told Fuzy that he had never seen any water leaking into the house while he lived there. Fuzy also contacted Bays, who told Fuzy that he had told Jason that the house had not been built correctly and that there would be a problem with the water coming off of the roof. Fuzy hired roofers to repair the roof, which entailed installing counterflashing. Fuzy and Robinson filed a claim with their insurance company and received approximately $16,000 to repair the inside of the house. We note that Fuzy and Robinson sold this property in 2006 for $142,000.

On September 17, 2004, Fuzy and Robinson filed suit against the Blevinses and Bays. In Count I of the complaint, they alleged that the Blevinses were in breach of contract pursuant to the disclosures they made regarding the residence, in that they stated that there were no leaks, although allegedly the roof had been defectively constructed. In Counts II and III, respectively, they alleged that the Blevinses negligently and fraudulently misrepresented that the house was free of defects, including roof leaks. Counts IV and V contained allegations that Bays negligently designed and constructed the residence. In an Amended Complaint, Fuzy and Robinson alleged that they relied upon the Blevinses' misrepresentations when they purchased the property.

On June 3, 2005, KFB moved for leave to intervene and to file a Petition for Declaratory Judgment, which was granted. In its petition, KFB indicated that from September 7, 2002, through February 19, 2003, it insured the home owned by the Blevinses at 521 Bourbon Street. KFB asserted that it had no obligation under the policy to furnish a defense to the suit against the Blevinses or to pay any judgment arising out of Fuzy and Robinson's allegations. The Blevinses filed a counterclaim against KFB, requesting that it provide both coverage and a defense. The parties filed briefs on the issue raised in the declaratory action. KFB maintained that there was no "occurrence" to trigger application of the policy, citing to the federal case of *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574 (6th Cir.2001). On the other hand, the Blevinses argued that the triggering "occurrence" was the improper installation of the counterflashing.

On September 13, 2006, the circuit court entered its Declaratory Judgment, stating:

> The main issue here is whether the water damage in the home constitutes an "occurrence" under the KFB homeowner policy. The homeowner policy defines "occurrence" as follows:
>
> > "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> >
> > a. "Bodily injury"; or
> >
> > b. "Property damage".
> >
> > "Property damage" means physical injury to, destruction of, or loss of use of tangible property.
>
> In *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574 (6th Cir.2001), "... a breach of contract claim cannot consti-

tute an 'occurrence' under liability policies triggered by an accident or an occurrence." It is important to note that the language of the homeowner policy in *Lenning* is identical to the policy language in KFB's policy with the Blevinses.

The *Lenning* Court again held that "[D]efective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence ... the courts generally conclude that defective workmanship is not what is meant by the term 'accident' under the definition of [']occurrence'."

Though, as a 6th Circuit case, *Lenning* is not binding upon this Court, it is instructive on the issue of homeowner insurance liability. "Kentucky Courts have held that the duty to defend is broader than the duty to indemnify. Insurers have an obligation to defend if there is an allegation 'which potentially, possibly or might come within the coverage of the policy.'" *Lenning.*

This Court holds that breach of contract is not an "occurrence" under the KFB homeowner policy, and therefore KFB has no duty to defend the breach of contract issue.

On the issue of defective workmanship, this Court holds that such is also not an "occurrence" under the policy, and therefore KFB has no duty to defend on this issue.

With regard to the issue of fraudulent representation, the Court finds that there is a possible cause of action that could impose liability for Defendant KFB, obligating them to defend on this issue.

**DECLARATORY JUDGMENT**

The Court declares and holds that KFB has a duty to defend the action only on the issue of fraudulent misrepresentation under Counts II and III of the complaint. The Court further holds that KFB has no duty to defend under Count I on the issue of breach of contract, and likewise has no duty to defend on Counts IV and V on the issue of defective workmanship. This is a final and appealable judgment.

KFB filed a motion to alter or amend the declaratory judgment regarding the holding that it had a duty to defend and provide coverage on the claim of fraudulent misrepresentation. KFB pointed out that a cause of action for fraudulent misrepresentation is based on an intentional act and that the policy specifically excludes coverage for intentional acts. It also argued that the intentional deception necessary to establish fraudulent misrepresentation could not by definition be an accident to trigger application of the policy. Furthermore, KFB argued that a lie on a disclosure statement cannot be deemed an occurrence under the liability provisions of the policy. The Blevinses also moved to alter, amend, or vacate the declaratory judgment, asserting that the circuit court should have found that the damage caused by the entry of rainwater into the house was an occurrence under the policy. On October 17, 2006, the circuit court entered an order denying the parties' respective motions, but amending the declaratory judgment as follows:

The Court declares and holds that KFB has a duty to defend the action only on the issue of negligent misrepresentation under Counts II and III[1] of

---

1. We note that the negligent misrepresentation claim was only made under Count II, not under Count III as was stated in the circuit court's order. We specifically disagree with the Blevinses' assertion in their brief that the circuit court found a duty to defend on the

the Complaint. The Court further holds that KFB has no duty to defend under Count I on the issue of breach of contract and likewise has no duty to defend on Counts IV and V on the issue of defective workmanship.

The parties appealed from this decision (appeal No.2006–CA–002348–MR and cross-appeal No.2006–CA–002354–MR); however, this Court dismissed the appeals as interlocutory in an Opinion and Order rendered February 15, 2008. KFB moved the circuit court to amend the September 2, 2006, declaratory judgment and the October 17, 2006, order to include the necessary language to make the rulings final pursuant to Kentucky Rules of Civil Procedure (CR) 54.02. The circuit court, in an order signed by current Greenup Circuit Court Judge Robert B. Conley, amended the earlier rulings on February 28, 2008. KFB has appealed and the Blevinses have cross-appealed from the initial rulings as amended. Based upon our direction in the prior Opinion and Order, the briefs from the first appeals were transferred to the present appeals, which have now been assigned to the same three-judge merits panel.

■ On appeal, KFB first argues that a cause of action for negligent misrepresentation does not apply to private transactions, such as the one between the Blevinses and Fuzy and Robinson, so as to require it to provide a defense and coverage under the policy. KFB also argues, as it did below, that the property damage was not caused by an "occurrence" as defined in the policy. On cross-appeal, the Blevinses assert that the circuit court misapplied *Lenning* and should

have determined that the damage caused by the entry of rainwater constituted an "occurrence" under the policy. Because these arguments represent questions of law, we shall review this matter *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky.App.2001).

## 1. KFB'S APPEAL

The sole issue raised in KFB's direct appeal is whether it is required to defend and indemnify the Blevinses based upon the tort of negligent misrepresentation.[2] We agree with KFB that the circuit court committed reversible error in so holding.

■ As correctly stated by KFB, the Supreme Court of Kentucky formally adopted Restatement (Second) of Torts § 552, addressing the tort of negligent misrepresentation, in *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 582 (Ky.2004): "Because we find § 552 to be consistent with Kentucky case law, we join the majority of jurisdictions and hereby adopt § 552's standards for negligent misrepresentation claims in this jurisdiction." Under subsection (1), § 552 provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information **for the guidance of others in their business transactions,** is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. [Emphasis added.]

fraudulent misrepresentation claim alleged in Count III of their complaint.

**2.** We note that the Blevinses did not actually respond to KFB's brief; their brief, although stating that it was an appellee/cross-appellant

brief, was served prior the date KFB's appellant brief was served and only addressed their argument on cross-appeal. KFB responded to the cross-appeal in its brief.

In our view, the phrase "for the guidance of others in their business transactions" is determinative of this issue. The transaction involved in this case was a private sale of residential property from one set of homeowners to another. This was not a business transaction as is required by § 552; therefore, the tort of negligent misrepresentation cannot be established. Because this tort is inapplicable in this case, KFB cannot be required to provide a defense or indemnification for the Blevinses. Therefore, the circuit court's order requiring KFB to defend the Blevinses on the claim of negligent misrepresentation is reversed.[3]

## 2. THE BLEVINSES' CROSS–APPEAL

The sole issue the Blevinses raise in their cross-appeal concerns whether there was an "occurrence" within the definition of the policy to trigger its liability provisions. Based upon our holding above and our statement in Footnote 1, we shall only address this argument as it relates to the Blevinses' breach of contract allegation in Count I. The Blevinses disagree with the circuit court's reliance on *Lenning* in deciding that breach of contract was not an "occurrence" under the policy.[4] The Blevinses contend that the leaking water, which caused damage to the house, was an "occurrence" under the policy, while KFB contends that their statements on the disclosure form did not cause the damage alleged and therefore could not constitute an "occurrence" to trigger application of the liability provisions of the policy. We agree with KFB.

■ We shall first set forth the provisions of the Blevinses' policy that are at issue in the present case. Under the policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. **'Bodily injury'**; or b. **'Property damage.'**" The policy then defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property." Under Section II of the policy, concerning coverage for liability, the policy provides under Coverage E for personal liability that KFB will pay damages up to its legal limit of liability and provide a defense, "[i]f a claim is made or a suit is brought against an **'insured'** for damages because of **'bodily injury'** or **'property damage'** caused by an **'occurrence'** to which this coverage applies[.]" Under Section II—Exclusions, the policy excludes personal liability coverage from bodily injury or property damage claims: "e. Arising out of a premises: (1) Owned by an **'insured'** [.]"

Both the circuit court and KFB relied upon the 6th Circuit Court of Appeals' opinion of *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574 (6th Cir.2001). In *Lenning*, Tapp (the home buyer) alleged that the general contractor used poor workmanship to build the home he purchased, forcing him to spend his own money to complete its construction. He filed suit in state court against the original property owner and general contractor. The original owner then sought a declaration of rights when her insurance company denied her a legal defense. The matter was then removed to federal court on the basis of diversity jurisdiction. On appeal,

---

3. We recognize that this holding will necessarily affect Count II of Fuzy and Robinson's underlying civil action.

4. In the same order, the circuit court held that KFB did not have a duty to defend on the defective workmanship claim. However, that cause of action was alleged against Bays (the builder), not the Blevinses.

the Court first outlined Kentucky law on the duty to defend, stating:

> Under Kentucky law, in order to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty. *Strong v. Louisville & Nashville R. Co.*, 240 Ky. 781, 43 S.W.2d 11, 13 (1931). . . .

Kentucky courts have recognized that the duty to defend is broader than the duty to indemnify. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky.1991). Insurers have an obligation to defend if there is an allegation "which potentially, possibly or might come within the coverage of the policy." *Brown Found.*, 814 S.W.2d at 279 (*citing O'Bannon v. Aetna Cas. and Sur. Co.*, 678 S.W.2d 390 (Ky.1984); *cf. Matheny v. Ludwig*, 742 So.2d 1029 (La.Ct.App. 1999)) (holding that the insurer is obligated to defend unless the complaint unambiguously excludes coverage). Therefore, even if an insurance company denies coverage based on the mistaken belief that it is justified in doing so, the company may still breach its contract with the insured. *See Eskridge v. Educator & Executive Insurers, Inc.*, 677 S.W.2d 887, 889 (Ky.1984).

*Lenning*, 260 F.3d at 581. The Court went on to discuss the "occurrence" requirement of the homeowner's policy in detail. Under the negligence claim, the Court held that the complaint did not allege an "occurrence", noting that "[c]ourts in other states have held that such a purely economic claim cannot constitute an 'occurrence.'" *Id.* at 582. It then stated,

> to the extent that the complaint alleges a breach of contract, there is similarly no 'occurrence'; courts have held that a breach of contract claim cannot constitute an 'occurrence' under liability policies triggered by an accident or an occurrence.

*Id.* We find the 6th Circuit's opinion to be persuasive, adopt its holding on this issue, and agree with KFB that the Blevinses' claim for coverage and indemnification must fail.[5]

In further support of our holding, we shall rely on 2 Insurance Claims and Disputes 5th § 11:7, which addresses the issue as follows:

> Numerous courts have held that the provision in an insuring clause agreeing to pay on behalf of the insured sums that the insured becomes "legally obligated to pay as damages" refers to liability imposed by law for torts, and not to damages for breach of contract. [Footnotes omitted.]

. . . .

Finally, there is the question, surprisingly rarely addressed by the courts, as to whether a breach of contract claim involves damages caused by an occurrence. The answer should, in general, be no.[6] As discussed above, contract

---

**5.** We have already addressed the negligence claim in the direct appeal. However, we would have been inclined to agree with KFB that the claim alleged against the Blevinses was more of a purely economic claim, rather than a property damage claim. Fuzy and Robinson were not alleging that they suffered any actual property damage at the Blevinses' hands, but rather that they would not have purchased the house or would have negotiated a lower price had the Blevinses stated the truth in the disclosure statement.

**6.** *See Auto–Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1564 (M.D.Ala.1996); *Custom Planning & Development, Inc. v. American Nat. Fire Ins. Co.*, 270 Ga.App. 8, 606 S.E.2d 39, 41 (2004); *Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 946–49 (9th Cir.2004) (Hawaii law) (No duty to defend. Although negligence alleged, only duty

claims based on an indemnity agreement are generally covered, but that should be because the underlying injury for which indemnity is sought resulted from an occurrence. That is not true in a typical breach of contract action. The injury is caused by the breach itself, which breach does not constitute an occurrence/accident.[7]

In the present case, we agree with KFB that the liability provisions of the Blevinses' policy were not triggered by Fuzy and Robinson's breach of contract claim. The breach identified in Count I of the underlying complaint was the allegedly false representation on the disclosure statement concerning the condition of the house.

allegedly breached was contractual obligation, and breach of contract is not covered by general liability policies because it does not constitute an occurrence). [Footnote 15 in original.]

**7.** *See* § 11:3. *See, e.g., Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 582 (6th Cir. 2001) (Kentucky law) ("a breach of contract claim cannot constitute an 'occurrence' under liability policies triggered by an accident or an occurrence"); *Hawkeye–Security Ins. Co. v. Davis,* 6 S.W.3d 419, 426 (Mo.Ct.App.S.D. 1999) (No coverage for losses "stemming solely from (the insured's) breach of his contractual obligations (and) breach of (express and implied) warranties" because "breach of a defined contractual duty cannot fall within the term 'accident.'... (P)erformance of the contract according to the terms specified therein was within the insured contractor's control and management and its failure to perform cannot be described as an undesigned or unexpected event"); *Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis.2d 235, 593 N.W.2d 445, 40 U.C.C. Rep. Serv.2d 417 (1999) ("breach of contract or warranty is not a covered 'occurrence'"); *Yegge v. Integrity Mut. Ins. Co.,* 534 N.W.2d 100, 102–3 (Iowa 1995) (claims for breach of contract and breach of warranty did not involve an "occurrence"); *Bruceton Bank v. U.S. Fidelity and Guar. Ins. Co.,* 199 W.Va. 548, 486 S.E.2d 19, 25–26 (1997); *Marine Office of America Corp. v. Quarry Associates, Inc.,* 963 F.Supp. 1392, 1397 (E.D.Pa.1997), judgment rev'd, 142 F.3d 428 (3d Cir.1998); *Gibson & Associates, Inc. v. Home Ins. Co.,* 966 F.Supp. 468, 475 (N.D.Tex.1997); *State Bancorp, Inc. v. U.S. Fidelity and Guar. Ins. Co.,* 199 W.Va. 99, 483 S.E.2d 228, 234 (1997) (citing cases) ("a breach of contract ... is not an event that occurs by chance or arises from unknown causes, and, therefore, is not an 'occurrence'"); *American States Ins. Co. v. Mathis,* 974 S.W.2d 647, 650 (Mo.Ct.App.E.D.1998) ("The cause of the loss was (the insured's)

failure to construct the ducts according to contract specifications. Such a breach of a defined contractual duty cannot fall within the term 'accident.' (B)reaches of contract are not 'accidents' or 'occurrences' "); *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.,* 860 P.2d 1094, 1099 (Wyo. 1993) (losses caused by breach of contract are not losses caused by an occurrence; as a result, there is no coverage); *St. Paul Fire and Marine Ins. Co. v. Campbell County School Dist. No. 1,* 612 F.Supp. 285, 287, 26 Ed. Law Rep. 628 (D.Wyo.1985) (breach of contract claim not covered because the policy required that the claim be caused by an occurrence, and "an occurrence refers to tortious conduct," not a breach of contract). *See generally Toombs NJ Inc. v. Aetna Cas. & Sur. Co.,* 404 Pa.Super. 471, 591 A.2d 304, 306–07 (1991):

The action, both in essence and upon its face, is one for a breach of contract. The nature of potential damages and the nature of the acts alleged both indicate that the action is one based in contract and not in tort. The recovery sought relates to a breach of contract, not a tortious act. [The insureds] have not offered any precedent that indicates that indemnification is provided for such damages when a comprehensive liability policy is purchased, and for good reason. To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation ... [A] liability policy cannot be reasonably construed to indemnify for damages sounding in contractual breach. Such a holding simply is not reasonable....
[Footnote 16 in original.]

That statement did not cause the damage to the house; the damage was caused by the water leakage. Accordingly, we hold that the Blevinses' claim for breach of contract does not constitute an "occurrence" under the liability provisions of their homeowners' policy to trigger KFB's duty to defend and indemnify them in the underlying suit. Therefore, we affirm the portion of the circuit court's judgment in which it held that breach of contract was not an "occurrence" under KFB's policy and that KFB did not have a duty to defend on that claim.

For the foregoing reasons, the judgment of the Greenup Circuit Court is affirmed in part and reversed in part, and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.