RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

WESTFIELD NATIONAL INSURANCE COMPANY (21-6026);
MOTORISTS MUTUAL INSURANCE COMPANY (21-6043),
                                    *Plaintiffs-Appellees*,

    *v.*

QUEST PHARMACEUTICALS, INC.,

                                    *Defendant-Appellant*.

Nos. 21-6026/6043

─────────────────

Appeal from the United States District Court for the Western District of Kentucky at Paducah.
Nos. 5:19-cv-00083; 5:19-cv-00187—Thomas B. Russell, District Judge.

Argued: October 20, 2022

Decided and Filed: January 13, 2023

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** James R. Coltharp, Jr., WHITLOW, ROBERTS, HOUSTON & STRAUB, PLLC, Paducah, Kentucky, for Appellant. Richard M. Garner, COLLINS, ROCHE, UTLEY & GARNER, Dublin, Ohio, for Appellee Westfield National Insurance Company. Patrick F. Hofer, CLYDE & CO US LLP, Washington, D.C., for Appellee Motorists Mutual Insurance Company. **ON BRIEF:** James R. Coltharp, Jr., WHITLOW, ROBERTS, HOUSTON & STRAUB, PLLC, Paducah, Kentucky, for Appellant. Richard M. Garner, COLLINS, ROCHE, UTLEY & GARNER, LLC, Dublin, Ohio, for Appellee Westfield National Insurance Company. Patrick F. Hofer, Elderidge A. Nichols, Jr., CLYDE & CO US LLP, Washington, D.C., Jared K. Clapper, CLYDE & CO US LLP, Chicago, Illinois, Richard L. Walter, BOEHL STOPHER & GRAVES LLP, Paducah, Kentucky, for Appellee Motorists Mutual Insurance Company. Gary Johnson, WESTON HURD LLP, Cleveland, Ohio, for Amici Curiae.

—————————

**OPINION**

—————————

COLE, Circuit Judge.   In the wake of a nationwide opioid epidemic, aggrieved individuals, local governments, and other organizations are taking pharmaceutical companies to task for their allegedly wrongful conduct in promoting and distributing prescription opioids. Quest Pharmaceuticals, Inc. ("Quest"), a Kentucky-based distributor of generic drugs, now finds itself on the receiving end of approximately 77 such lawsuits.  Quest reported the litigation to its insurers, Westfield National Insurance Co. ("Westfield") and Motorists Mutual Insurance Co. ("Motorists"), who promptly filed suit in federal court and sought declaratory judgments that they were not required to defend or indemnify Quest in the underlying lawsuits.  The district court granted summary judgment to the insurers, reasoning that the relevant policy language, which requires the insurers to defend Quest in lawsuits seeking damages "because of bodily injury," did not cover the claims brought against Quest.  After its motion for reconsideration was denied, Quest timely appealed and the cases were consolidated for argument and opinion. Because we agree with the district court's interpretation of the policies' scope under Kentucky law, we affirm.

## I.  BACKGROUND

Quest Pharmaceuticals, Inc. is a Kentucky-based wholesale distributor of pharmaceutical products.  Quest specializes in distributing generic versions of popular drugs, including opioids. Like many other opioid manufacturers and distributors, Quest now faces an onslaught of litigation related to its alleged contributions to the nationwide opioid epidemic.  Relevant here are approximately 77 lawsuits brought by cities, counties, a county health department, private health clinics, and the state of Illinois, (collectively, "underlying plaintiffs") all of which allege that Quest engaged in misconduct that has contributed to a nationwide epidemic of opioid abuse. The underlying plaintiffs plead violations of the RICO Act, violations of state statutes, and common law claims of public nuisance and negligence.  The underlying plaintiffs' damages include "significant expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services."  (Summit Cnty. Compl., R. 35-80, PageID 12158.)  Many of

the complaints also clarify that the plaintiffs' claims "are not based upon or derivative of the rights of others" and that the plaintiffs "do not seek damages for death, physical injury to person, emotional distress, or physical damages to property[.]" (*See, e.g.*, *id.* at PageID 12159.)

Quest reported these lawsuits to Westfield, its insurer from 2015 to 2017, and Motorists, its insurer from 2004 to 2015. The Westfield and Motorists insurance policies contain the same language in their relevant portions:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Westfield Commercial Gen. Liab. Coverage Form, R. 36-2, PageID 684 (hereinafter "Westfield CGL"); Motorists Commercial Gen. Liab. Coverage Form, R. 1-12, PageID 1706 (hereinafter "Motorists CGL").)

The policies go on to explain that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Westfield CGL, PageID 684; Motorists CGL, PageID 1706.) "Bodily injury" is then defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Westfield CGL, PageID 696; Motorists CGL, PageID 1718.)

After learning of the pending litigation against Quest, Westfield and Motorists filed separate actions in the Western District of Kentucky, seeking declaratory judgments that they had no duty to defend or indemnify Quest in the underlying lawsuits.

Westfield and Motorists each moved for summary judgment under Federal Rule of Civil Procedure 56. The district court granted both summary judgment motions in separate but almost identical decisions, concluding that the policies' coverage of damages "because of bodily injury" did not extend to the claims alleged in the underlying lawsuits. In so ruling, the district court consulted the few relevant cases from Kentucky state courts and similar cases from other

jurisdictions. Given that the court found that the policies did not require either insurer to defend or indemnify Quest in the underlying litigation, it never reached Westfield's alternative argument that the policies' "known-loss" provision, which excludes injuries the insured knew of before purchasing the policy, also precluded coverage of the underlying lawsuits.

Quest then filed timely motions to amend, alter, or vacate judgment in each case pursuant to Federal Rule of Civil Procedure 59. The district court denied each motion, again in separate but almost identical writings. Quest filed a timely notice of appeal in each case. The cases were then consolidated for argument and opinion.

## II. ANALYSIS

### A. Legal Standards

We review de novo a district court's decision on the interpretation of an insurance contract. *Answers in Genesis of Ky., Inc., v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). We likewise review de novo a grant of summary judgment. *Branham v. Gannett Satellite Info. Network*, 619 F.3d 563, 568 (6th Cir. 2010). Summary judgment is appropriate only where there is no genuine dispute of material fact, entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a).

As a federal court sitting in diversity, we must apply Kentucky law to this question of contract interpretation. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 402 (6th Cir. 2019). Absent controlling authority from the Kentucky Supreme Court, we look to the decisions of Kentucky appellate courts and other relevant "data" to predict how the Kentucky Supreme Court would rule if presented with the question before us. *OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*, 679 F.3d 456, 460 (6th Cir. 2012).

In accordance with Kentucky law, we interpret the policies "according to the parties' mutual understanding at the time they entered into the contract[s]" based solely—where possible—on the plain language of the contract. *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999). And we resolve any ambiguities in the policies' language in favor of the insured's "reasonable expectations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003).

Because the plain language of the policies shows that they do not cover the underlying claims, and alternatively, no insured would reasonably expect the policies to cover the kind of lawsuits at issue in this case, we affirm the district court's grants of summary judgment in favor of the insurers.

## B.  Plain Meaning

Broadly speaking, terms in an insurance policy are given their plain and ordinary meaning, such that words with no "technical meaning in law" are interpreted in accordance with common use and understanding. *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007).  Clear and unambiguous policy terms are enforced as drafted. *See Holzknecht v. Kentucky Farm Bureau Mut. Ins. Co.*, 320 S.W.3d 115, 118 (Ky. Ct. App. 2010).

The policies here require the insurers to defend Quest against lawsuits seeking "damages because of bodily injury" and indemnify Quest for any such damages that Quest becomes "legally obligated to pay[.]"  (Westfield CGL, PageID 684; Motorists CGL, PageID 1706.)  An insurer's duty to defend arises whenever an allegation in an underlying complaint "might" fall within the policy's purview.  *Kentucky Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005).  The duty to defend is broader than the duty to indemnify, meaning that if the insurers have no duty to defend Quest in the underlying lawsuits, they also have no duty to indemnify it for any damages it becomes obligated to pay in those lawsuits.  *See James Graham Brown Found., Inc. v. Saint Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279–80 (Ky. 1991).

All agree that the underlying lawsuits seek "damages" within the meaning of the policy; they also agree that the lawsuits do not seek damages directly "*for* bodily injury."  The sole disagreement is whether the damages sought are "*because of* bodily injury."  As such, in accordance with Kentucky law, we first consider the plain meaning of the language "because of bodily injury" to determine if the underlying lawsuits trigger the insurers' duty to defend Quest. *See Bituminous Cas. Corp.*, 240 S.W.3d at 638.

*1. "Because Of"*

Generally, the phrase "because of" means "on account of" or "by reason of." *See* Webster's Third New International Dictionary 194 (2002); *Acuity v. Masters Pharm., Inc.*, -- N.E.3d --, 2022 WL 4086449, at \*7 (Ohio 2022); *see also Gross v. FBL Servs., Inc.*, 557 U.S. 167, 176 (2009) (citing Webster's Third New International Dictionary 194 (1966)). Quest argues that the underlying lawsuits are "because of bodily injury" where they would not have been brought but for injuries caused by opioid abuse and addiction, and thus exist by reason of or on account of those underlying injuries.[1] The insurers argue that the claims are not "because of bodily injury" where they fail to allege any particular bodily injury and seek only economic damages for costs the underlying plaintiffs incurred in addressing the opioid epidemic.

There is no Kentucky case law directly addressing this question, but the relevant data from similar cases points us toward the insurers' position that "because of" is not so broad as to encompass the underlying lawsuits against Quest. To begin, in *Kentucky Central Insurance Co. v. Schneider*, the Kentucky Supreme Court determined that punitive damages do not constitute damages "because of bodily injury." 15 S.W.3d 373, 376 (Ky. 2000). The court reasoned that punitive damages are intended to punish a wrongdoer rather than compensate "for bodily injury." *Id.* As Quest notes, the court never explicitly stated that "because of" is synonymous with "for," which would give it a narrower definition than the one suggested by dictionaries and other cases interpreting the phrase. Nevertheless, *Schneider* is analogous: The underlying plaintiffs seek purely economic damages, which, like punitive damages, are not meant to compensate for a particular bodily injury. Thus, like the punitive damages sought in *Schneider*, they are detached from any underlying physical harm and, therefore, arguably *not* "because of bodily injury."

The case of *Aetna Casualty & Surety Co. v. Commonwealth*, 179 S.W.3d 830 (Ky. 2005), offers additional data. In *Aetna*, the Kentucky Supreme Court suggested that "because of" was equivalent to "arising out of" in the context of an insurance policy. *See id.* at 838. But the key issue in that case was whether clean-up costs for radioactive waste—a form of property damage explicitly covered by the policy—qualified as "damages" within the meaning of the policy. *Id.*

---

[1]No party disputes that opioid abuse and addiction can constitute or lead to bodily injuries.

at 839. Causality is less clear here, where the underlying plaintiffs seek economic damages not to compensate an explicitly covered injury, but rather to cover the costs of activities conducted in relation to many indeterminate injuries. Thus, *Aetna*'s apparently broader definition of "because of" still does not clearly encompass the underlying lawsuits against Quest.

Quest also points to *Hoskins v. Kentucky Farm Bureau Mutual Insurance Co.*, in which a Kentucky appellate court determined that an insurance policy that excluded claims "for" bodily injuries sustained in an uninsured vehicle nevertheless covered a loss of consortium claim arising from such an injury where the policy covered claims "because of" but not "for" bodily injuries. *See* No. 2011-001454, 2012 Ky. App. LEXIS 213 (Ky. App. Ct. Oct. 12, 2012). The *Hoskins* court interpreted "because of" to be broader than "for," supporting Quest's assertion that the underlying lawsuits may be covered even though they are not brought to compensate for any particular bodily injury. But the Kentucky Court of Appeals has since rejected *Hoskins*'s rationale in a published decision concluding that an insurance policy did not cover a loss of consortium claim based on an explicitly excluded bodily injury. *See Cheatwood v. Kentucky Farm Bureau Mut. Ins. Co.*, 654 S.W.3d 720, 724 (Ky. Ct. App. 2022).

More to the point, in both *Aetna* and *Hoskins*, by virtue of the claims at issue, the underlying plaintiffs had to plead and prove that the relevant bodily injury or property damage occurred in order to recover on their claims. In *Aetna*, the costs at issue were caused by explicitly covered property damage—radioactive waste. 179 S.W.3d at 834–35, 839. And in *Hoskins*, the underlying plaintiff brought a loss of consortium claim arising from her spouse's bodily injury, the existence of which had to be proved for her to recover. 2012 Ky. App. LEXIS 213, at *4–5. Thus, the interpretation of "because of" adopted in those cases is not necessarily broad enough to encompass the lawsuits here; unlike the claims in *Aetna* and *Hoskins*, the underlying plaintiffs need not plead and prove the existence of a covered bodily injury to recover against Quest. As a result, we agree with the district court that the lawsuits against Quest are not "because of bodily injury" within the meaning of the policies.

Our conclusion is bolstered by recent decisions from other jurisdictions addressing the same question presented here. Most recently, the Ohio Supreme Court ruled that lawsuits brought against Masters Pharmaceutical, Inc. by government entities seeking to recover public

service costs related to the opioid epidemic were not "because of bodily injury" under Masters's insurance policy. *Acuity*, 2022 WL 4086449, at *1. Like the lawsuits against Quest, Masters faced lawsuits seeking damages for expenses "caused by the opioid epidemic, including increased emergency response costs, law enforcement and incarceration costs, addiction treatment costs, and medical costs, as well as accelerated economic blight[.]" *Id.* at *2 (internal marks omitted). The *Acuity* court determined that the lawsuits were not "because of bodily injury" where they lacked "more than a tenuous connection" to any individualized bodily injury and did not require proof of such injury to recover the economic damages alleged. *Id.* at *9–10; *see also ACE Am. Ins. Co. v. Rite Aid Corp*., 270 A.3d 239, 241 (Del. 2022) (concluding that lawsuits brought by local government plaintiffs to recover opioid epidemic-related costs were not "because of bodily injury" under the relevant insurance policies).

Quest correctly notes that the only decision from a federal court of appeals considering this precise issue reached the opposite conclusion, but we are not convinced that the reasoning in that case applies here.[2] In *Cincinnati Insurance Co. v. H.D. Smith*, the Seventh Circuit held that the policy at issue required the insurer to defend a lawsuit brought by West Virginia to recover costs from an opioid manufacturer. 829 F.3d 771, 775 (7th Cir. 2016). Critically, the Seventh Circuit understood Illinois law to distinguish between coverage "for bodily injury" as opposed to "because of bodily injury." *Id.* at 774 (citing *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010)). It is not apparent that such a distinction exists under Kentucky law, or, even if it does, that Kentucky courts would interpret "because of" to be so broad as to cover the underlying lawsuits here.

Additionally, the Seventh Circuit analogized West Virginia's claims to a scenario where a mother seeks reimbursement for costs she incurred while caring for her sick child and explained that the mother's damages would be covered even though they represented her own expenses, not compensation for the child's injury itself. *Id.* at 774. Yet the mother in *H.D. Smith*'s analogy still would have to prove the existence of her child's injuries to recover her

---

[2]In *Travelers Property Casualty Co. of America v. Anda, Inc.*, the Eleventh Circuit affirmed a decision denying insurance coverage to a pharmaceutical company for a lawsuit brought by West Virginia to recover costs related to the opioid epidemic, but its analysis relied on policy exclusions not present here. 658 F. App'x 955, 958 (11th Cir. 2016).

caregiving costs, while the underlying plaintiffs here do not.  *See also Acuity*, 2022 WL 4086449, at \*10 (disagreeing with *H.D. Smith*'s analysis).

In short, we conclude that lawsuits brought by local governments and other entities to recover costs incurred due to the opioid epidemic—but not to recover for any specific bodily injuries—do not trigger the insurers' duties to defend or indemnify Quest.

### 2. *"Bodily Injury"*

Our conclusion as to the meaning of "because of" also accords with the policies' definition of "bodily injury."  The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Westfield CGL, PageID 696; Motorists CGL, PageID 1718).  This definition—particularly the phrase "sustained by a person"—further grounds our interpretation of the policy, emphasizing that the lawsuits must be tied to an individual's (or individuals') bodily injury or injuries.

All parties agree that the lawsuits allege no particular injury to any particular person. The allegations instead broadly describe societal harms caused by opioid addiction, such as diminished productivity and increased healthcare costs (Okla. City Compl., R. 35-25, PageID 5049–50), which the underlying plaintiffs tie to Quest's (and other pharmaceutical companies') "saturation of communities with prescription opioids . . . fueling illicit opioid addiction," (*id.* at PageID 4994).  As such, the underlying lawsuits against Quest are not "because of bodily injury" and the insurers have no duty to defend Quest or indemnify it for any damages it may owe.

### C.  Context and Purpose

Because the policy language is clear and its plain meaning shows that the underlying lawsuits do not trigger the insurers' duty to defend, our analysis can end there.  *See United Specialty Ins. Co.*, 936 F.3d at 402–03.  Even if the relevant provision could be considered ambiguous, however, the surrounding context and overall purposes of the policies make clear that an insured would not reasonably expect coverage of the underlying lawsuits.  Although ambiguous policies are construed in favor of an insured's reasonable expectations, *see Aetna Cas. & Sur. Co.*, 179 S.W.3d at 837, they must be applied "consistent[ly] with the parties' object

and intent" as "expressed in the plain meaning and/or language of the contract." *Saint Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky. 1994).

At the threshold, the context surrounding the relevant provision, which explains that the insurers have a duty to defend Quest in lawsuits seeking damages for bodily injury, shows that our narrower interpretation comports with an insured's reasonable expectations. As the insurers note, the policies use both "because of bodily injury" and "for bodily injury" interchangeably; even if the terms are not equivalent, this mixed usage informs an insured's expectations by hinting that those terms are at least comparable.

Reading these terms as fungible also accords with the Kentucky rule of contract interpretation that inconsistencies in a policy are to be harmonized where possible. *See Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875–76 (Ky. 2003) (citing 43 Am. Jur. 2d, *Insurance*, § 275). Here, reading "for" and "because" to have different meanings introduces confusion rather than clarity into provisions that use both phrasings, such as one stating that the policy covers claims for damages "because of bodily injury" but that the insurer has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (Westfield CGL, R. 36-2, PageID 684.)

Furthermore, the policies' use of definite articles before "bodily injury" suggests that an insured would reasonably expect coverage only for claims requiring proof of an actual bodily injury, not all claims tangentially related to bodily injuries. The definition of "bodily injury" refers to injuries "sustained by *a* person." (Westfield CGL, PageID 696; Motorists CGL, PageID 1718 (emphasis added).) Likewise, the so-called known-loss provision bars coverage of what would otherwise be a covered injury if the insured knew of "*the* 'bodily injury'" prior to the policy period. (Westfield CGL, PageID 684 Motorists CGL, PageID 1720 (emphasis added).) Such definite articles indicate that the policies extend coverage only to claims seeking compensation related to specific, identifiable injuries, rather than claims based on social harms from a public health crisis.

The definition of "damages" likewise informs our understanding of the policies' scope and purpose—namely, covering tort claims. "Damages because of 'bodily injury' include

damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Westfield CGL, R. 36-2, PageID 684; Motorists CGL, R. 1-12, PageID 1706.) Quest contends that this definition shows that the policies were intended to extend to lawsuits like those at issue here, where entities that could be considered "organizations" are seeking to recover costs related to providing medical treatment to people suffering from opioid addiction or abuse, among other expenses. This argument has some intuitive appeal, but in the grander scheme of things, it becomes apparent that this definition was meant to include derivative claims, like loss of consortium claims by family members, and subrogation claims, often brought by "organizations" such as insurance companies, that are directly related to and dependent on the existence of a particular bodily injury or injuries. *See, e.g.*, *Daley v. Reed*, 87 S.W.3d 247, 250 (Ky. 2002) (noting that loss of consortium claims derive from personal injury claims and are covered based on a policy's inclusion of "damages for care and loss of services"); *Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558, 560–61 (Ky. 1996) (describing a subrogation action by an insurance company to recover from a tortfeasor in a personal injury case).

Last, other insurance-related cases from this court and from Kentucky courts suggest that insured parties cannot avail themselves of the insurer's duty to defend—or by extension its duty to indemnify—where the claims alleged in an underlying complaint are purely economic and thus too attenuated from a specific covered injury. In *Lenning v. Commercial Union Insurance Co.*, for example, we determined that a policy providing coverage for lawsuits seeking damages "because of" bodily injury or property damage did not require an insurer to defend an insured against claims for faulty workmanship. 260 F.3d 574, 582–83 (6th Cir. 2001). In that case, the underlying plaintiff sought damages not for property damage but for the "tremendous expense" of finishing a shoddy construction job that the insured had promised to complete. *Id.* at 582. The underlying plaintiff in *Lenning*—like the underlying plaintiffs suing Quest—thus sought purely economic damages that were related to but did not directly implicate the covered injury of property damage.

The Kentucky Court of Appeals approved of *Lenning* and its application of Kentucky law in *Kentucky Farm Bureau Mutual Insurance Co. v. Blevins*, 268 S.W.3d 368 (Ky. Ct. App.

2008). There, the Kentucky court agreed with *Lenning*'s conclusion that a claim for breach of contract did not trigger an insurer's duties to defend or indemnify based on an insurance policy that covered claims "because of" property damage. *Id.* at 374–76; *accord Preferred Auto. Sales Inc. v. Motorists Mut. Ins. Co.*, 652 F. App'x 312, 315 (6th Cir. 2020) (Moore, J., concurring in the judgment) (noting that claims for fraud, breach of contract, violations of state statutes, and negligence in selling a faulty automobile were not "because of" bodily injury or property damage).

Likewise, in cases related to business losses caused by the COVID-19 pandemic and related government restrictions, we have found that such losses are not covered where the claimants allege only economic harm from loss of use rather than damage to property itself. *See Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 700–01 (6th Cir. 2022) (finding Kentucky law did not require insurers to cover claims for business losses that did not allege property damage); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 403–04 (6th Cir. 2022) (same under Michigan law); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402–04 (6th Cir. 2021) (same under Ohio law). Insurance "is not a general safety net for all dangers," and courts must avoid interpreting insurance coverage to exceed the limits of a policy's plain language, lest they risk disrupting the parties' intentions or the risk assessments underlying insurance generally. *Santo's*, 15 F.4th at 407.

The same logic translates to the claims against Quest and its insurance policies. Nothing in the policies suggests that they were meant to cover lawsuits like the ones here, brought primarily by local governments to recover purely economic damages. The plain language instead indicates that claims must in some way derive from a particular bodily injury to a person. Although some of the complaints plead tort claims such as nuisance or negligence, the underlying theory of recovery is that Quest's alleged misconduct resulted in economic harms to the entities themselves. No complaint predicates recovery on a particular person's bodily injury, and so no complaint triggers the insurers' duty to defend.

\* \* \*

Based on the plain language of the policies and their overall context and purpose, we believe that the Kentucky Supreme Court would conclude that the insurers have no duty to defend Quest in the underlying lawsuits because they do not seek damages "because of bodily injury." The claims, all of which are for economic damages, are simply beyond the policies' scope. Because we conclude that there is no duty to defend, there is also no duty to indemnify. Likewise, as the policies' plain terms preclude coverage, we need not examine Westfield's alternative argument that it may deny Quest coverage based on the known-loss provision excluding coverage for previously known injuries.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's grants of summary judgment in favor of Westfield and Motorists and its denial of Quest's motions for reconsideration.