NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0195n.06

Case No. 24-3338

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

COLUMBIA CASULATY COMPANY,

  Plaintiff - Appellee,

v.

STATE AUTO MUTUAL INSURANCE
COMPANY; ROCKHILL INSURANCE
COMPANY,

  Defendants - Appellants,

ACE AMERICAN INSURANCE COMPANY,

  Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Apr 10, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

OPINION

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In this insurance coverage case, State Automobile Mutual Insurance Company and its subsidiary Rockhill Insurance Company (collectively, "State Auto") appeal the district court's order granting summary judgment to Columbia Casualty Company and ACE American Insurance Company (individually, "Columbia" and "ACE" and collectively, "the insurers"). State Auto argues that it is entitled to coverage under certain errors and omissions ("E&O") policies the insurers issued. According to State Auto, it incurred a covered loss when it paid a $13.3 million judgment in a wrongful death action against its insured, The Waves of Hialeah, Inc., to avoid bad faith liability.

Because the district court correctly determined that State Auto was not covered under the policies, we affirm.

I.

In April 2016, Yaimi Machado and a friend visited a Florida motel operated by Waves. *See Waves of Hialeah, Inc. v. Machado*, 300 So.3d 739, 741 (Fla. Ct. App. 2020) (per curiam). Late one night, the two began to argue in their motel room. *Id.* Their argument eventually spilled into the hallway while their room key remained inside. *Id.* The friend then left, leaving Machado locked out of her room, half-naked, and with her personal belongings inside. Machado went to the hotel lobby for help, but the receptionist refused to let her back into the room, falsely claiming that the room was registered under a different name.

While Machado waited for her friend to return, Ronald Andrade arrived at the motel. Although motel staff knew he was "drunk and aggressive," they did not ask him to leave. DE 45-3, Demand Ltr., Page ID 1244. Andrade eventually found Machado, still locked out of her room, and proceeded to rape and beat her to death.

Shortly after the murder, Machado's estate sued Waves for wrongful death in Florida state court. *Machado*, 300 So.3d at 741. Waves notified its insurer, State Auto, of the lawsuit. Waves had a general liability policy, which included a $1 million per occurrence limit of liability. State Auto agreed to defend Waves and appointed defense counsel.

A few months later, the estate sent a letter to Waves, demanding $1 million to settle the lawsuit. The letter detailed the estate's liability theory against Waves. It also directed its settlement demand to State Auto, asserting that State Auto's refusal to settle would be akin to bad faith under Florida law. State Auto did not accept the settlement offer.

About a year later, the estate sent another letter, this time demanding $5 million to settle the Florida lawsuit. The 2017 Demand Letter also emphasized State Auto's alleged bad faith conduct for failing to accept the earlier $1 million settlement demand, asserting that "[e]very fact

question necessary for a reasonable jury to determine that all prerequisites to bad faith . . . have been far exceeded." DE 45-4, 2017 Demand Ltr., Page ID 1263. Once again, State Auto did not accept the offer. The case proceeded to trial.

A jury ultimately awarded the estate $12 million in damages, finding Waves completely at fault. State Auto notified its insurers of the verdict and sought coverage for the amount of the judgment that exceeded the $1 million limit of the Waves Policy. State Auto sent Columbia various materials related to the Florida lawsuit and advised the insurer that it had retained bad faith counsel.

About a month later, Columbia informed State Auto that it would treat the jury's verdict against Waves as a "notice of circumstance" rather than a "claim" made against State Auto under the policy. DE 44-12, Columbia Jan. 2016 Email, Page ID 982. ACE adopted the same position as Columbia.

Meanwhile, Waves appealed the jury's verdict, with State Auto voluntarily securing the appeal bond. A Florida Court of Appeals affirmed the verdict, *Machado*, 300 So.3d at 741, and the Supreme Court of Florida declined to grant certiorari. No. SC20-530, 2020 WL 2316639, at *1 (Fla. May 11, 2020).

With the appeals now exhausted, the estate moved for judgment on the appeal bond. The trial court entered a final judgment against Waves, about $13.3 million with the post-judgment interest included. State Auto paid the full amount of the final judgment to the estate.

Columbia then denied coverage. Once again, Columbia determined that no "claim" had been made against State Auto under the policy. ACE also denied coverage, adopting Columbia's coverage determination. State Auto disputed the denials.

After failing to resolve their coverage dispute, Columbia filed this action, seeking a declaratory judgment that it was not obligated to provide coverage under the policy. State Auto counterclaimed against Columbia and filed a third-party complaint against ACE, asserting breach of contract and bad faith claims and seeking a declaratory judgment. ACE counterclaimed against State Auto and sought a declaratory judgment. The parties moved for summary judgment on all claims. The district court granted Columbia's and ACE's motions and denied State Auto's motions. State Auto timely appealed.

II.

State Auto argues that the district court erred in granting summary judgment to the insurers. This court reviews de novo a district court's summary judgment decision interpreting an insurance contract. *Westfield Nat'l Ins. v. Quest Pharms., Inc.*, 57 F.4th 558, 561 (6th Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute of material fact, entitling the moving party to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). As the movants, the insurers bear the burden of establishing that there are no genuine issues of material fact. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). The insurers can meet this burden by showing that the nonmoving party, State Auto, lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Because this is a diversity action, we must apply Ohio law to this question of contract interpretation. *See Westfield Nat'l Ins.*, 57 F. 4th at 561 (citation omitted). Under Ohio law, insurance contracts, like any other written contract, must be given a reasonable construction in conformity with the parties' intention. *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001). When the terms of an insurance policy are unambiguous, the court applies the terms as written. *Gomolka v. State Auto. Mut. Ins.*, 436 N.E.2d 1347, 1348 (Ohio 1982). When the terms

of a policy are ambiguous—that is, susceptible to more than one reasonable interpretation—the court construes them strictly against the insurer and liberally in the insured's favor. *Hacker v. Dickman*, 661 N.E.2d 1005, 1006 (Ohio 1996).

State Auto, the insured, bears the burden of establishing coverage under the policy. *Chi. Title Ins. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999). To do so, State Auto must "show facts sufficient to prove that its loss was within the description of the policy." *Sterling Merch. Co. v. Hartford Ins.*, 506 N.E.2d 1192, 1198 (Ohio Ct. App. 1986).

III.

At issue in this appeal is the scope of two insurance policies. The first is Columbia's policy, which provided primary E&O coverage to State Auto for the policy period from December 1, 2017, to December 1, 2018. The second is ACE's policy, which provided excess E&O coverage for the same period. Because the ACE policy provided coverage under essentially the same terms as Columbia's policy, we address only Columbia's policy ("the policy") below.

The first page of the policy reads:

> THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION VI. DEFENSE COSTS ARE WITHIN THE LIMITS OF LIABILITY.

DE 45-12, Columbia Policy, Page ID 1353 (emphasis omitted). The policy then provides that:

> The Insurer shall pay on behalf of the Insureds that Loss resulting from any Claim if such Claim is first made against the Insureds during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act in the rendering or failing to render Professional Services.

*Id.* (emphases omitted).

Interpreting this provision, the district court determined that State Auto was not covered under the insurance policy for two reasons: (1) the estate's 2017 Demand Letter was not a "claim"

made against State Auto and (2) State Auto's payment of the $13.3 million judgment was not a covered "loss."

IV.

State Auto argues that the 2017 Demand Letter asserted a "claim" against it based on its alleged bad faith in refusing to settle the Florida lawsuit. The policy defines a "claim" as:

1. a written demand for monetary damages or non-monetary relief;
2. a civil proceeding in a court of law or equity or arbitration; or
3. a formal administrative or regulatory proceeding, against an Insured, including any appeal therefrom.

DE 45-12, Columbia Policy, Page ID 1369 (emphasis omitted). Because the letter did not initiate a civil or administrative proceeding, State Auto must show that it was a "written demand for monetary damages or non-monetary relief" against State Auto. *Id.* State Auto fails to do so.

To be sure, the 2017 Demand Letter is "a written demand for monetary damages." *Id.* In it, the estate expressly demands $5 million. The demand, however, is to settle "all claims the Estate has *against The Waves*." DE 45-4, 2017 Demand Ltr., Page ID 1262 (emphasis added). It therefore seeks payment from Waves, not State Auto.

State Auto points out that the letter's subject line refers to "*Your Insured*: The Waves of Hialeah" and explains that the purpose of the letter was "to put the insured *and the carrier* on notice of [the estate's] new demand, as [its] previous policy limit demand was rejected." *Id.* (emphases added). According to State Auto, had the letter been directed solely to Waves, including these insurer-specific references would have made no sense. That the letter was addressed, in part, to State Auto does not transform it into a "claim" against State Auto. When the estate sued Waves, State Auto agreed to defend Waves and retained defense counsel. The letter was sent and received between counsel: the estate, as State Auto concedes, "had no privity of contract or direct line of communication with State Auto." CA6 R. 24, Appellant Br., at 23 n.6. Even if the letter were

addressed to State Auto, the settlement demand was directed at Waves, the party allegedly liable for Machado's death and the estate's resulting damages. Because the demand letter was directed at Waves, it did not assert a bad faith "claim" against State Auto.

Any such "claim" asserted against State Auto in the 2017 Demand Letter would also be premature. As State Auto recognizes, "an insurer that fails to settle a lawsuit against its insured is liable in bad faith *upon the rendering of a judgment* in excess of the insured's policy limit." CA6 R. 24, Appellant Br., at 18 (emphasis added). The Florida state court, however, did not render the final judgment until April 2020. As a result, the 2017 letter did not assert a bad faith claim against State Auto because there was no legal basis for bad faith liability at that time. Under the Waves Policy, State Auto was only liable to Waves for $1 million.

State Auto reasons that the letter asserted a "conditional claim" that ripened into an actual claim when the Florida state court rendered the excess-of-limits judgment. But it is unclear whether such a claim can trigger insurance coverage.[1] The parties do not cite any Ohio[2] caselaw

---

[1] States courts are divided on whether a conditional claim can trigger insurance coverage. Some courts hold that a triggering claim requires the filing of a lawsuit or the entry of a judgment against an insured. *See, e.g.*, *Augat, Inc. v. Liberty Mut. Ins.*, 571 N.E.2d 357, 360 (Mass. 1991) (holding third party's threat to sue insured was insufficient to trigger coverage). Other courts hold that an insured's potential liability can trigger coverage. *See, e.g.*, *Potomac Ins. of Ill. v. Huang*, No. 00-4013-JPO, 2002 WL 418008, at *10–13 (D. Kan. Mar. 1, 2002) (finding insured's payment of requested repairs sufficient to trigger coverage because it had a "legitimate fear that [a] lawsuit was imminent").

[2] State Auto argues that Florida, not Ohio, law applies to the conditional claim issue. Because Ohio is the forum state, Ohio's choice of law rules apply. *Miller v. State Farm Mut. Auto. Ins.*, 87 F.3d 822, 824 (6th Cir. 1996); *see Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496 (1941). Under Ohio law, this court conducts a choice of law analysis when there is an "actual conflict between local law and the law of another jurisdiction." *McCruter v. Travelers Home & Marine Ins.*, 168 N.E.3d 1, 11 (Ohio Ct. App. 2021).

State Auto claims that a conflict exists between Florida and Ohio law: although Ohio courts have not addressed the conditional claim issue, some Florida courts have found conditional claims sufficient to trigger coverage under insurance policies. *See, e.g.*, *Paradigm Ins. v. P & C Ins. Sys., Inc.*, 747 So.2d 1040, 1041 (Fla. Ct. App. 2000) (finding letter alleging negligence and

recognizing conditional claims. Even if Ohio law recognized such claims, State Auto's conditional claim would have expired before judgment. As the district court noted, the settlement offer in the 2017 Demand Letter expired in August 2017. Because the settlement offer expired before the contingency (an excess-of-limits judgment) was met, so too did the conditional claim.

State Auto counters that the August 2017 deadline applied only to the demand *amount,* not the *demand itself.* For that to be true, the letter would have to contain an additional demand for damages against State Auto. But the only time the letter asserts any demand is when it demands $5 million "to settle all claims the Estate has against [] Waves." DE 45-4, 2017 Demand Ltr., Page ID 1262. State Auto's argument also assumes that a demand for some unspecified amount of money is enough to trigger coverage. This court has been clear, however, that only a "demand for payment of *some amount of money*" is a triggering claim. *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir. 1986) (emphasis added).

Even if the letter asserted a claim against State Auto, the claim was not based on State Auto's alleged bad faith. Under the policy, coverage is triggered only when a claim against State Auto is "for a Wrongful Act in the rendering or failing to render Professional Services." DE 45-12, Columbia Policy, Page ID 1353 (emphases omitted). The letter does assert bad faith allegations

---

requesting insured "turn this letter over to your errors and omissions insurance carrier for handling" a triggering claim even though it did not expressly demand damages).

That one state's courts have spoken more clearly on an issue than another's does not create a "conflict" for choice of law purposes. An actual conflict occurs when, for example, one state's laws provide a remedy while the other state's laws do not. *See, e.g.*, *Mendoza v. J.M. Smucker Co.*, 674 F. Supp. 3d 439, 450 (N.D. Ohio 2023) ("Because the employment discrimination laws of Ohio and Louisiana conflict with respect to the availability of punitive damages, the Court must choose the law that applies to this case."). In any event, the outcome of this case would be the same no matter which state's law we apply. We therefore apply Ohio law. *See Elkins v. Am. Int'l Special Lines Ins.*, 611 F. Supp. 2d 752, 761 (S.D. Ohio 2009) ("[W]here the jurisdictions involved would . . . reach the same result under their respective laws, a choice-of-law determination is unnecessary and the laws of the forum state apply.").

against State Auto. But alleging that State Auto acted in bad faith is not the same as seeking payment from State Auto on account of its alleged bad faith conduct. *See MGIC*, 797 F.2d at 288; *Med. Protective Co. v. Am. Int'l Specialty Lines Ins.*, No. 1:13-CV-357-HAB, 2020 WL 365020, at \*4–5 (N.D. Ind. Jan. 22, 2020) (distinguishing claims made against the claimant from claims made against the insurer), *aff'd sub nom.*, 990 F.3d 1003 (7th Cir. 2021). State Auto's conduct certainly gave the estate leverage to argue that it was in State Auto's best interest to settle for an amount above the $1 million policy limit. It did not, however, transform the estate's demand into a bad faith claim against State Auto.

The policy's other provisions provide further support that the demand letter did not assert a "claim" against State Auto. *See Cincinnati Ins. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007) (observing that insurance contracts are interpreted "as a whole"). Consider the policy's section on reporting deadlines. A "claim," as defined above, must be reported within 30 days of the end of a policy period. DE 45-12, Columbia Policy, Page ID 1360. By contrast, a "circumstance" that "may reasonably be expected to give rise" to a claim need only be reported at the insured's discretion. *Id.* The policy therefore distinguishes between actual claims and potential claims. It would be odd for the policy to establish a reporting framework for actual claims versus potential claims if, as State Auto insists, a mere intention to hold the insured responsible was the same as an actual claim. *See Bensalem Twp. v. W. World Ins.*, 609 F. Supp. 1343, 1348 (E.D. Pa. 1985) ("Notice that it is someone's intention to hold the insureds responsible for a Wrongful Act is an event commonly antecedent to and *different in kind from* a 'claim.'" (cleaned up)). Interpreting "claim" to include potential claims would also render the policy's language addressing "circumstances" superfluous, violating the rule of construction directing courts to give meaning to all policy provisions. *See Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 295 (Ohio

2011) ("In interpreting a contract, we are required, if possible, to give effect to every provision of the contract."). Because the policy distinguishes between actual and potential claims, we decline to construe the latter as a triggering claim.

The 2017 Demand Letter, at bottom, seeks payment from Waves for the motel's alleged negligence, not State Auto for the company's alleged bad faith. Because the letter did not assert a triggering claim, an "essential element" of State Auto's case, summary judgment was warranted on that basis alone. *Am. & Foreign Ins. v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 344 (6th Cir. 2006). We need not, therefore, consider the district court's alternative basis for summary judgment—that State Auto did not suffer a "loss" under the policy.[3]

V.

For the foregoing reasons, we affirm the judgment of the district court.

---

[3] The insurers also assert several other coverage defenses. Because the district court did not rule on these issues and they are unnecessary to resolve this appeal, we decline to address them here. *See Freed v. Thomas*, 976 F.3d 729, 741 (6th Cir. 2020) (noting that this court "typically" declines to address "issues unless ruled upon by the trial court" (citation omitted)).